UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM LEE ALLEN, JR.,

               Petitioner,

                                          Case Number 19-12953
v.                                     Honorable David M. Lawson

MICHAEL BURGESS,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner William Lee Allen, Jr., pleaded no contest to sexual misconduct charges involving his eight-year-old stepdaughter. The plea agreement called for the dismissal of a more serious charge. He was sentenced to concurrent prison terms totaling ten to fifteen years. But when the paperwork was processed, Allen was surprised to learn that mandatory lifetime electronic monitoring (LEM) also was part of the sentence. Neither the trial court nor Allen's lawyer had informed him that LEM was a mandatory consequence of his convictions. Eventually, Allen was given a post-appeal hearing in the trial court where it was disclosed that he could have moved to withdraw his no contest plea, which is the remedy the state courts typically allow when this type of defect in a guilty plea proceeding is found. The state court determined that Allen decided to forego that relief because of the uncertain outcome he faced with the original charges. The state court therefore rejected his claim that his trial and appellate attorneys were constitutionally ineffective. Allen raises those same arguments here in a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Because the state courts' decisions reasonably applied controlling federal law and reasonably determined the facts of the case, the petition will be denied.

I.

Allen was accused of sexually abusing his stepdaughter between November 1, 2014 and January 21, 2015.  At a forensic interview, the eight-year-old victim reported Allen had been taking her into his bedroom when her mother was not home "since she was big . . . start[ing] when it was cold outside."  Plea Hr'g Tr., 8/17/2015, ECF No. 6-2, PageID.80.  She said that Allen rubbed his penis around her vagina and inserted his fingers and his penis into her vagina, which hurt her.

Allen originally faced four felony counts: first-degree criminal sexual conduct (with a person under 13 years of age); second-degree criminal sexual conduct (with a person under 13 years of age); accosting a child for immoral purposes; and third-degree criminal sexual conduct (incest).  In exchange for Allen's no contest plea to the second, third, and fourth counts, the prosecutor agreed to dismiss the first-degree criminal sexual conduct charge.  During the plea hearing in the Alpena County, Michigan circuit court, the trial court reviewed the maximum penalties of the charges with the petitioner and ascertained that he had not been coerced, threatened, or otherwise induced to plead no contest.  At no time during the hearing was LEM mentioned as part of the penalty Allen faced.

On October 13, 2015, the court sentenced Allen to concurrent prison terms totaling ten years to fifteen years.  Again, LEM was never mentioned at the sentencing hearing.  However, the sentencing papers documented that penalty as a component of the petitioner's sentence, J. of Sent., ECF No. 6-4, PageID.92; LEM is mandatory for a second-degree criminal sexual conduct conviction.  Mich. Comp. Laws § 750.520n.

Robert J. Dunn was appointed to represent Allen on appeal.  Dunn filed a motion to correct his sentence in the trial court pursuant to *People v. Lockridge*, 496 Mich. 852, 846 N.W.2d 925 (2014).  He did not cite the non-advice about LEM, for reasons explained below.  The trial court

denied the motion, and Michigan Court of Appeals denied leave to appeal. *People v. Allen*, No. 331724 (Mich. App. May 5, 2016). Allen filed an application for leave to appeal to the Michigan Supreme Court, which was rejected as untimely. Aff., ECF No. 6-6, PageID.103 (Affidavit of the Clerk of the Michigan Supreme Court).

Allen returned to the circuit court with a motion for relief from judgment. He argued he received ineffective assistance of counsel when his trial attorney failed to inform him that his no-contest plea to second-degree criminal sexual conduct would result in a mandatory LEM requirement; that the trial court did not ensure his plea was knowingly made when it failed to advise him of the LEM requirement; and that appellate counsel had been constitutionally ineffective when he failed to raise the first two issues on appeal. The circuit court denied the motion, finding that Allen failed to establish good cause and prejudice for not raising the issues previously before the state appeals court.

The Michigan Court of Appeals denied Allen's delayed application for leave to appeal, *People v. Allen*, No. 335745 (order) (Mich. App. Mar. 8, 2017), but the Michigan Supreme Court granted relief. "[I]n lieu of granting leave to appeal," it remanded the case to the circuit court for an evidentiary hearing to determine whether appellate counsel rendered ineffective assistance by failing to move to withdraw the no contest plea and whether Allen was entitled to relief from judgment on that basis. *People v. Allen*, 501 Mich. 1075, 911 N.W.2d 462, 463 (2018) (citing *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973)).

A new lawyer was appointed for Allen. At the evidentiary hearing, both Allen and his first appellate attorney, Robert Dunn, testified. Dunn verified that he was well aware of the case law establishing the requirement that defendants be informed of the lifetime monitoring requirement at guilty plea hearings, and he was "always looking for that on every CSC case." Ev. Hr'g Tr.,

– 3 –

9/12/2018, ECF No. 11-1, PageID.342 (referring to *People v. Cole*, 491 Mich. 325, 337, 817 N.W.2d 497, 503 (2012)).  He recognized that Allen was not informed of that requirement.  *Id.* at PageID.335.  Dunn stated that he specifically discussed the issue with Allen, who was afraid that he would not "get a fair shake in Alpena County" if he withdrew his plea.  *Id.* at PageID.336, 339, 343.  Dunn explained:

> Mr. Allen did, did not believe that he gets fair treatment in Alpena County.  He was concerned about having to start over again.  He thought certain people were biased against him.  And it had something to do with his radio show.  I guess he was a, a DJ in the community, and he, and he made some public comments that some people didn't like.  As I say I substantially remember the conversation, but some of my details may not be a hundred percent accurate.  But that's, that's what I recall from it.  And he thought if he went back and started over again he didn't think he'd get a fair shake in Alpena County.

*Id.* at PageID.336.  Dunn also told Allen that there were risks that come with a successful plea withdrawal motion.  He said:

> Because I tell my clients — I've been handling appeals for a long time.  And I tell them that if you do get the plea set aside don't expect the Prosecutor's gonna give, give you any better offer because they never do.  And, and you might end up worse.  And had we gotten onto the record, had I filed a motion.  I always make a record to make sure that they still want to go through it, make sure they realize they could end up in worse, in a worse place.  But, when it's all said and done.

*Id.* at PageID.338.  He told Allen to write to him if he changed his mind, because he would not file a motion to withdraw the plea without the client's authorization.  *Id.* at PageID.337.  Allen never wrote to him, and the appeal focused on reducing his sentence by challenging the guidelines scores.  *Id.* at PageID.336-38, 343-44.  Dunn asserted that he always warns his clients that a plea withdrawal may place them in a worse position.  *Id.* at PageID.338.

Allen's hearing testimony did not align with Dunn's.  He testified that he asked Dunn if they should pursue withdrawing his plea because he was not informed of the LEM requirement.  *Id.* at PageID.348, 352.  He said that Dunn responded that it was an issue they "could not raise[,]"

– 4 –

but did not explain why. *Ibid.* Allen said that he only discovered the *Cole* case when he performed his own legal research after the Michigan Court of Appeals denied the application for leave to appeal. *Id.* at PageID.352.

The trial court chose to accept Dunn's version. It found that Allen's no contest plea was not knowing or voluntary because there was "no dispute that [Allen] was subject to lifetime electronic monitoring as part of his sentence," but he was not informed of that requirement. Order, 9/13/18, ECF No. 6-10, PageID.310. However, the court also held Allen had not demonstrated that appellate counsel was constitutionally deficient by failing to move to withdraw his plea on that basis. *Id.* at PageID.311. The court accepted Dunn's testimony that he had advised Allen about "the opportunity for a mandatory plea withdrawal . . . ," and that Allen declined to ask that the plea be withdrawn. *Ibid.* The trial court rejected Allen's testimony that he had not been advised of his right to withdraw his plea. *Ibid.* The court concluded therefore that Allen was not denied the effective assistance of appellate counsel and was not entitled to relief from judgment. *Ibid.*

Allen did not file an application for leave to appeal the trial court's ruling in either the Michigan Court of Appeals or the Michigan Supreme Court. He explains that he did not file those applications because he did not receive the trial court's September 12, 2018 order until February 1, 2019, despite writing to both the trial court and his appellate attorney. As Allen interpreted the Michigan Court Rules, it was then too late to appeal.

Allen filed his petition for a writ of habeas corpus, arguing that he was deprived of his federal constitutional right to the effective assistance of appellate counsel on direct appeal when attorney Dunn did not argue that the plea proceeding was defective due to the failure of advice that LEM was a mandatory consequence of conviction of the sexual misconduct crime to which he was pleading no contest. He also argues that Dunn performed deficiently when he did not argue on

appeal that Allen's trial counsel performed defectively by not telling Allen about the LEM consequence at or before the plea hearing.  Pet., ECF No. 1, PageID.9, 11.

The Warden contends that this claim should not be addressed on the merits because it is "unexhausted, inexhaustible, and thus procedurally defaulted," since Allen never appealed the trial court's decision after the evidentiary hearing.  It is true that a habeas petitioner must "exhaust" all available state remedies for each of the claims in the petition by "fairly present[ing] . . . to [all levels of] the state courts both the factual and legal basis" for the habeas claims.  *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *see also* 28 U.S.C. § 2254(b)(1); *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009).  And when a habeas petitioner fails to raise a claim in the state appellate courts, and "at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999).  The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling — or nonruling — on that basis is an adequate and independent ground for the denial of relief.  *Coleman*, 501 U.S. at 750.  But the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

– 6 –

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of

– 7 –

Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

There are two components to Allen's argument, one factual and one legal. The factual part consists of Allen's contention that attorney Dunn never told him that he could move to withdraw his no contest plea, but to be careful about that decision because he could end up worse off if he faced the original charges. The trial court made a credibility finding when it chose Dunn's version of the encounter over Allen's. That court concluded that Allen could have asked for — and likely obtained — relief from the error in the plea proceeding: the withdrawal of his no contest plea, which would have put him in the same posture had he not tendered the plea in the first place.

Federal courts determining habeas corpus petitions "give state-court factual findings a 'presumption of correctness' that may only be rebutted by 'clear and convincing evidence.'" *Michael*, 59 F.4th at 225 (quoting 28 U.S.C. § 2254(e)(1)). Applying that rubric, the question is "not whether a federal court believes the state court's [factual] determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Allen has not breached that threshold. He argues that his perception that he would be punished by the trial court "for comments made during a radio station interview" demonstrates he did not understand his right to withdraw his plea. Pet., ECF No. 1, PageID.14. But that evidence actually shows the opposite: Allen recognized the potential risk of plea withdrawal, a risk he was not willing to take. The trial court based its construction of the facts on Dunn's testimony, which

was reasonable.  The conclusion that Allen made his decision not to pursue plea withdrawal is presumed correct and sets the stage for the legal argument.

Allen insists that both his trial counsel and his appellate counsel were constitutionally ineffective.  A petitioner claiming a violation of his Sixth Amendment right to the effective assistance of counsel must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).  And where the challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently.  *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

In habeas cases, the Court's review of a lawyer's performance is "doubly deferential." *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). In addition to the *Strickland* analysis, courts applying AEDPA must ask "whether the state court was reasonable in its determination that counsel's performance was adequate."  *Ibid.* (citing *Burt*, 571 U.S. at 15).  To prevail on an ineffective assistance claim, a habeas petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Allen's trial attorney plainly performed deficiently when he failed to tell him that LEM was a mandatory component of a second-degree criminal sexual conduct sentence. *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) ("A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available."). "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis." *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring); *see also Lee v. United States,* --- U.S. ----, 137 S. Ct. 1958, 1966 (2017) (finding deficient an attorney's performance when he failed to inform his client that a plea deal could render the defendant deportable).

There is no basis in the record, however, to find that Dunn's performance was deficient. He clearly explained the options Allen had and expounded on the consequences of failure *and* success that might flow from pursuing each one. No more could be expected of him. *See Smith*, 348 F.3d at 553. The decision to opt for plea withdrawal was Allen's to make, and the state court determined that he made it with eyes open, thanks to the explanation from his appellate lawyer. And that advice was not incorrect. Generally, a criminal defendant cannot be punished for pursuing legitimate appellate remedies, but if Allen had withdrawn his no contest plea, he would have faced the original charges, including the more serious first-degree criminal sexual misconduct charge. That reality could have resulted in a worse outcome, as Dunn accurately explained.

That finding also bears on the prejudice component. An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Trial counsel's deficient performance rendered Allen's no contest plea uninformed and unknowing because he was not told about his exposure to LEM.  "[T]he proper remedy for an unknowing plea . . . is allowing the defendant to plead anew." *United States v. Jones*, 53 F.4th 414, 418 (6th Cir. 2022); *see also Haight v. Jordan*, 59 F.4th 817, 856 (6th Cir. 2023).  Allen had the option to pursue precisely that remedy, and all indications are that he likely would have been successful under the law clearly established by the state supreme court. *See People v. Cole*, 491 Mich. 325, 337, 817 N.W.2d 497, 503 (2012).  Because he chose to forego that opportunity, there is no chance that "the result of the proceeding would have been different" absent trial counsel's mistake.

Allen has not demonstrated prejudice flowing from trial counsel's deficient performance. And he has not shown that appellate counsel preformed deficiently.  Unless a habeas petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.  The state trial court, which entered the last reasoned opinion in this case, faithfully applied this federal law.

III.

The petitioner's claim does not present a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The

petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 6, 2023